UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re<br><br>DANIEL J. GALLAGHER,<br><br>                         Debtor<br><br>AMY COOPER,<br><br>                         Plaintiff<br><br>v.<br><br>DANIEL J. GALLAGHER,<br><br>                         Defendant | Chapter 7<br>Case No. 19-11674-FJB<br><br><br><br><br>Adversary Proceeding<br>No. 19-1095 |

**MEMORANDUM OF DECISION**

By the two remaining counts in this adversary proceeding, the plaintiff seeks a determination that a judgment debt owed her by the defendant and chapter 7 debtor, Daniel J. Gallagher, is excepted from discharge in this bankruptcy case by operation of Bankruptcy Code §§ 523(a)(2)(A) and (a)(6). After a trial, I now enter the following findings of fact and conclusions of law under Fed. R. Civ. P. 52(a)(1), made applicable by Fed. R. Bankr. P. 7052. On the basis thereof, I find that the Plaintiff has failed to carry her burden of establishing the requirements of nondischargeability under §§ 523(a)(2)(A) and (a)(6) and accordingly dismiss the remaining counts of this adversary complaint.

**PROCEDURAL HISTORY**

On May 16, 2019, Daniel Gallagher ("Gallagher" or the "Debtor") filed a petition for relief under chapter 7 of the Bankruptcy Code. In the bankruptcy case thereby commenced, Amy Cooper ("Cooper" or the "Plaintiff") filed the complaint commencing this adversary proceeding. She seeks relief in four counts. At the start of the trial, the Plaintiff withdrew Count II for a determination of nondischargeability under §

523(a)(4). After the Plaintiff rested her case, the Court ruled in favor of the Debtor on his Rule 52(c) motion for a judgment on partial findings with respect to Count IV, an objection to the Debtor's discharge under § 727(a)(4)(A), in light of an utter lack of evidence in support of that relief. In the two remaining counts, the Plaintiff seeks a determination that Gallagher's judgment debt is excepted from the discharge that Gallagher seeks in this chapter 7 case: in Count I, under 11 U.S.C. § 523(a)(2)(A); and in Count III, under § 523(a)(6). The parties submitted proposed findings and conclusions. In Count I, the Plaintiff contends that her judgment against the Debtor is one for money obtained by false representations or omissions. In Count III, the Plaintiff asserts that her judgment against the Debtor is the result of a willful and malicious injury by the Debtor against her or her property.

**FINDINGS OF FACT**

The parties introduced a total of twenty exhibits and offered the testimony of three witnesses, the Plaintiff, the Debtor, and the Plaintiff's spouse and attorney in the state court, Mark Cooper. I found the Debtor more credible than Cooper on the critical issues before me. Mark Cooper testified about the Plaintiff's state court proceedings against the Debtor, which testimony was ultimately not pertinent to the Plaintiff's claims and will not be discussed further. My findings of fact are as follows.[1]

At all relevant times, the Plaintiff owned real property at 25 Pondview Road, Falmouth, Massachusetts. In or around the spring of 2007, the Plaintiff sought to hire a contractor to perform work on her driveway. The Plaintiff contacted and received bids from multiple contractors, including Gallagher Shields Building Company, Inc. ("Gallagher Shields"). The Debtor is the president of Gallagher Shields and a licensed home improvement contractor in Massachusetts. The Debtor has filed for bankruptcy relief on at least two prior occasions.

In the spring of 2007, the Debtor visited the Plaintiff's property, evaluated the project, and

---

[1] Cooper's evidence was curiously thin on many issues on which she had the burden of proof. At the start of the trial, she indicated her intent to call an expert witness. But she had failed to disclose such a witness as required by the pretrial order, and for that reason the witness was excluded on the Debtor's motion. It may be that she intended to have the expert witness fill in her missing evidence.

2

prepared a bid for the work, which included the installation of a retaining wall. The Debtor recommended that cement parking barriers be installed to protect the wall's integrity from vehicles parking too close to the edge of the wall. The Plaintiff declined this recommendation and said she would purchase concrete flower boxes to line the driveway and protect the wall. The Debtor testified and I so find that he prepared a contract on behalf of Gallagher Shields and that he signed it as president of the company. The Debtor further testified, and I find, that when he filed for bankruptcy he gave the written contract to a bankruptcy attorney, and it was thereafter lost. Prior to commencing work, the Debtor spoke with a building inspector for the town and was informed that a permit would not be required for the retaining wall as it was under forty-eight inches high. The Debtor testified that he had "insurance" coverage while working on this project, but the type and scope of its coverage –e.g., general liability, worker's compensation, etc. - was never made clear by either party.

Over one year after the Debtor's completing the project, the retaining wall partially collapsed. When the Debtor returned to the Plaintiff's house, he observed no cement flower boxes in the driveway, and the Plaintiff informed him that she never purchased them, thus failing to protect the wall from vehicles. The Debtor further observed that many of the blocks and stones used to construct the retaining wall had been removed from the area of the wall. The Debtor told the Plaintiff that he would repair the wall, but it would require her to pay to replace the materials that were no longer at the site. The Debtor estimated that the replacement materials would cost approximately $1,000. The Plaintiff declined to pay the $1,000 to replace the missing materials. Instead, she hired engineers to find out why the wall failed and how to properly repair it. She eventually paid over $13,000 to have the retaining wall repaired.

**JURISDICTION**

The matter before the court is a complaint under 11 U.S.C. § 523(a) to determine the dischargeability of a debt. The matter arises under the Bankruptcy Code and in a bankruptcy case and therefore falls within the jurisdiction given the district court in 28 U.S.C. § 1334(b) and, by standing order of reference, referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a). It is a core proceeding. 28

3

U.S.C. § 157(b)(2)(I) (core proceedings include determinations as to the dischargeability of particular debts). This court accordingly has authority to enter final judgment in the matter. 28 U.S.C. § 157(b)(1).

**DISCUSSION**

    a. **Applicable Law**

As noted above, the two remaining counts in this proceeding are the Plaintiff's assertion that her judgment against the Debtor is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (a)(6). It is axiomatic that exceptions to discharge are to be narrowly construed and that all genuine doubts should be resolved in favor of the Debtor and against Cooper. Under § 523(a)(2)(A), a "discharge under . . . this title does not discharge an individual debtor from any debt — for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." The Plaintiff bases her § 523(a)(2)(A) claim entirely on false representations.

The First Circuit applies a six-part test for establishing non-dischargeability under § 523(a)(2)(A), the so-called *Palmacci* test:

> in order to establish that a debt is nondischargeable because obtained by "false pretenses, a false representation, or actual fraud," we have held that a creditor must show that 1) the debtor made a knowingly false representation or one made in reckless disregard of the truth, 2) the debtor intended to deceive, 3) the debtor intended to induce the creditor to rely upon the false statement, 4) the creditor actually relied upon the misrepresentation, 5) the creditor's reliance was justifiable, and 6) the reliance upon the false statement caused damage.

*McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 32 (1st Cir. 2001) (citing *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997)). A party seeking to except a debt from discharge bears the burden of proving each element by a preponderance of evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

A mere breach of a contract, of course, does not establish fraud or misrepresentation for purposes of § 523(a)(2)(A). *Vaks et al v. Grenier (In re Grenier)*, No. 07-1131, 2009 WL 763352, at *10 (Bankr. D. Mass. 2009). An omission can amount to a false representation, but only in circumstances where the

4

omission is a de facto statement. *In re Ackerman*, 587 B.R. 750, 783 (Bankr. D. Mass. 2018). For example, where a debtor is required by a bankruptcy schedule to list all transfers within two years before his bankruptcy filing—the debtor's failure to list a particular transfer can be a representation that there was no such transfer. *Id.* Silence in the face of a statutory obligation to disclose could likewise amount to a false statement.[2]

Intent to deceive refers to a debtor's mental state and specifically requires an intent to deceive, manipulate, or defraud. *Palmacci*, 121 F.3d at 786-87 (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976)). "Availability of direct evidence to prove a debtor's intent to deceive a creditor is unlikely to be obtained. The court, therefore, may infer fraudulent intent from the totality of circumstances." *Danvers Savings Bank v. Alexander (In re Alexander)*, 427 B.R. 183, 195 (Bankr. D. Mass. 2010) (citing *Palmacci*, 121 F.3d at 789).

The final four elements embody the requirement that the creditor's claim must arise directly from the debtor's fraud. *McCrory*, 260 F.3d at 32. As to the creditor's reliance, the Supreme Court of the United States has held that § 523(a)(2)(A) requires only justifiable reliance—a lower standard than reasonableness. *Field v. Mans,* 516 U.S. 59, 70 (1995). Reliance is justifiable if the falsity of the representation would not have been readily apparent to the person to whom it was made. *Id.* at 70-72. Under the justifiable reliance standard, "a person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *Id.*, quoting Restatement (Second) of Torts § 540. For purposes of determining whether reliance was justified, "the circumstances of the reliance claim

---

[2] Some cases have held that a debtor's silence regarding, or omission of, a material fact can constitute a false pretense or actual fraud under § 523(a)(2)(A), at least when the debtor is duty-bound to disclose the fact. See *In re Docteroff*, 133 F.3d 210, 216–217 (3d Cir.1997); *In re Van Horne*, 823 F.2d 1285, 1288 (8th Cir.1987), abrogated on other grounds by *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); and *Matter of Weinstein*, 31 B.R. 804, 809 (Bankr. E.D.N.Y. 1983) ("It is well recognized that silence, or the concealment of a material fact, can be the basis of a false impression which creates a misrepresentation actionable under § 523(a)(2)(A).). I do not understand the Plaintiff here to rely on either the actual fraud or false pretense prong of § 523(a)(2)(A).

must be taken into account," and "the individual is not obliged to investigate statements made to him (although he cannot shut his eyes to an obvious falsehood)." *Lentz v. Spadoni* (*In re Spadoni*), 316 F.3d 56, 59 (1st Cir. 2003).

Section 523(a)(6) excepts from discharge any debt for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). It requires evidence of injury to another "entity," which is a defined term that includes a person, 11 U.S.C. § 101(15), or the property of another entity. The injury must be both willful and malicious. "Willfulness" requires a showing of intent to injure or at least of intent to do an act which the debtor is substantially certain will lead to the injury in question. *Kawaauhau v. Geiger*, 523 U.S. 57 (1998). "Malicious" requires the injury to have been "wrongful," "without just cause or excuse," and "committed in conscious disregard of one's duties." *Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853, 859 (1st Cir. 1997). Malice thus has both objective and subjective elements: the injury must have been objectively wrongful or lacking in just cause or excuse; and the debtor must have inflicted the injury in "conscious disregard" of duty, meaning with awareness that the act was wrongful or lacking in just cause or excuse. *Burke v. Neronha (In re Neronha)*, 344 B.R. 229, 231-32 (Bankr. D. Mass. 2006). "An injury is malicious if it was wrongful and without just cause or excuse, even in the absence of hatred, spite or ill-will." *Old Republic National Title Ins. V. Levasseur (In re Levasseur)*, 737 F.3d 814, 818 (1st Cir. 2013) (quoting *Printy*, 110 F.3d at 859).

    b. **Analysis**

Here, the Plaintiff argues under § 523(a)(2)(A) that the Debtor did not inform her about permits for the retaining wall as required by Mass. Gen. Laws ch. 142A § 2, and therefore, his omission constitutes a misrepresentation. Additionally, the Plaintiff argues that the Debtor had a duty to disclose information under Mass. Gen. Laws ch. 142A § 2 in a written contract, which she contends he did not provide. I begin with the Plaintiff's first argument.

Section 2 of Mass. Gen. Laws ch. 142A requires a contractor to inform a homeowner of "any and all *necessary* permits" (emphasis added). As previously discussed, the Debtor testified credibly that a permit

6

was not necessary for this project, and Cooper offered no contrary evidence. I find that no permit was necessary, and I conclude that the Debtor not obligated by ch. 142A, § 2, to disclose any permit in conjunction with this project. Absent a legal obligation to disclose, the Debtor's failure to inform Cooper of a permit requirement was not a representation, much less a false one.

As to the Plaintiff's second argument, under MASS. GEN. LAWS ch. 142A, § 2, a contractor must provide notice in its written contract with a homeowner of certain rights and remedies available to the homeowner, such as post-judgment compensation from the Residential Contractor's Guaranty Fund, arbitration, three-day cancellation rights, and all warranties and rights under ch. 142A. The Plaintiff testified that she did not receive any written contract from the Debtor. Conversely, the Debtor testified that he did provide the Plaintiff a written contract but has since lost the document. Again, I found the Debtor more credible on this issue. The Debtor is a licensed home improvement contractor with many years of experience. His testimony that he was aware of the need for a contract and that he provided one rings true. Moreover, there was no evidence or argument presented that the Debtor spoliated the written contract. Without the contract in evidence, of course, I cannot determine whether the required disclosures were made. However, I must resolve all genuine doubt in favor of the Debtor that the disclosures were in the written contract. Therefore, I find the Debtor made no false representation to the Plaintiff, and that she has proven no omission amounting to a false representation.

While the foregoing is sufficient for the dismissal of the claim under 11 U.S.C. § 523(a)(2)(A), to test the remaining elements of that claim, I will assume that the Debtor did not make the required disclosures in a written contract, and therefore, that he made a false representation. As best I can discern, the Plaintiff seeks to establish that the Debtor intended to deceive by reference to (1) the frequency and timing of the Debtor's bankruptcy filings; (2) his request for $1,000 to fix the damaged retaining wall; AND her allegation that the Debtor had no insurance to cover the damage to her wall. I find the Plaintiff's arguments unconvincing. While the Plaintiff has established that the Debtor has filed three bankruptcy cases, including this case, she has provided no evidence that the Debtor's intent in filing such cases was

7

somehow to deceive her, much less that the multiple bankruptcy filings are evidence of general dishonesty. Both the Plaintiff and the Debtor testified that the $1,000 the Debtor requested was to purchase replacement materials to repair the retaining wall, not for labor, and I fail to see how this fact supports a finding of his intent to deceive; the Debtor was essentially offering his labor for free. Finally, the Plaintiff has not shown that the Debtor was under an obligation to carry insurance that would cover her damages. Thus, I cannot find the Debtor's lack of insurance, if in fact that was the case, demonstrates intent to deceive. Notably, none of the Plaintiff's arguments speak to the Debtor's intent to deceive by failing to make the required disclosures in a written contract, which is the relevant intent for this analysis.

The Plaintiff offered no evidence that she justifiably relied on any false representation. The Plaintiff has not shown what rights she would have exercised had the Debtor made the required disclosures in the contract or what remedies she was precluded from realizing as a result of the Debtor's failure to disclose. Similarly, the Plaintiff has failed to show that her damages were caused by her reliance on any false representation. The Plaintiff appears to argue that her general reliance on the Debtor who has "spent his whole life in construction" was reasonable. To be actionable under 11 U.S.C. § 523(a)(2)(A), the Plaintiff must establish that she justifiably relied on a false representation made by the Debtor. She has simply not done so.

Turning to her claim for relief under 11 U.S.C. § 523(a)(6), the Plaintiff alleges that the Debtor acted willfully and with wrongful intent when he allegedly failed to maintain proper insurance, failed to provide her with a written contract, and failed to obtain proper permits. Her claim falls short for several reasons. First, she did not prove the predicates of those allegations. I found the Debtor credible when he testified that he in fact provided a written contract, that he was informed by the town that no permits were required, and that he had insurance for the project (although neither party proved what types of insurance were required). Second, the Plaintiff failed to prove that the Debtor intended to cause injury to her property or evidence from which such intent could be inferred. Third, the Plaintiff made no argument that the Debtor acted maliciously; much less has she offered evidence that the Debtor's alleged conduct

8

was even wrongful as is required under § 523(a)(6).  For the reasons stated herein, I find that she has not met her burden of establishing nondischargeability under § 523(a)(6).

**CONCLUSION**

For the reasons set forth above, I find that the Plaintiff has failed to establish cause to except her judgment against the Debtor from his discharge under §§ 523(a)(2)(A) and (a)(6).  The Court will accordingly dismiss the remaining counts of this adversary complaint.

Date: July 8, 2021

Frank J. Bailey
United States Bankruptcy Judge